Mr. Folsom May it please the Court. Good morning, Your Honors. My name is Ben Folsom, and I represent Appellant Michael Carter in this matter. Mr. Carter's Sixth Amendment rights were violated by his trial counsel's failure to investigate and call Jeremiah McReynolds, a disinterested and unbiased witness who would have testified that Michael Stone and Stone alone shot Friday Gardner on the evening of September 12, 1999. This failure requires the reversal of the District Court's denial of Mr. Carter's petition for a writ of habeas corpus. The importance of this failure is highlighted by the fact that the District Court recently granted the habeas petition of Cortez Jones, Mr. Carter's co-defendant, who was tried separately and also convicted of the murder of Gardner. And the petition was granted on the ground that Jones's trial counsel failed to call exculpatory witnesses at his trial. The District Court made this determination after a finding of procedural innocence, which in turn was made after an evidentiary hearing at which McReynolds and others testified. In its decision granting Jones's petition... I'm interested in the status of the record in this case. Was there ever a request in state court for an evidentiary hearing? A request in state court? A proposed conviction? Yes. I believe that was included in Mr. Carter's petition, a state post-conviction petition. I haven't been able to find any request in state court for an evidentiary hearing or any decision by the state judiciary one way or the other disposing of such a request. If there was one, I would very much like to know it. Because one of the things that worries me about this case is that if there was no request for a hearing in state court, it's not clear how someone can then come to federal court and say, well, the record doesn't show what the attorney did or why he did it when the defendant bypassed an opportunity to put that information in the state record. Okay. You probably don't want to use your time now. We'll be happy to accept a letter after argument explaining one way or the other whether there was a request, and if there was such a request, what the state judiciary did about it. Absolutely, Your Honor. As I was saying with respect to Joan's petition, that in... This is not Joan's petition. You would do best to spend your limited time arguing Carter's petition. Very well, Your Honor. Mr. Carter's trial counsel rendered deficient performance. His conduct in failing to investigate and call McReynolds fell below an objective standard of reasonableness. An attorney can make a legitimate strategic decision not to call a witness if he has first conducted a reasonable investigation. The issue here... Well, you see why I'm asking about the evidentiary hearing in state court, right? What you want us to do is assume that the lawyer made no investigation at all, and the state wants us to assume that the lawyer looked at the police reports, made a decision, right? The state says there wasn't even a contention in state court that the lawyer failed to investigate. The contention made in state court was the lawyer failed to call these two witnesses, not that he failed to investigate. We really need to pin down exactly what happened in state court. On that point, Your Honor, Mr. Carter's affidavit attached to his state court petition, that's page number 383 of the record. He does state that his trial counsel never investigated McReynolds or Calmees, despite having been provided with their information. That would certainly be a basis for a hearing, and then we could find out what the lawyer's testimony and files show. That's why I really want to know whether there was a request for a hearing. So again, the issue here is that Mr. Carter's trial counsel did not conduct a reasonable investigation, and he never interviewed or contacted McReynolds in order to find out what his testimony would be, despite the fact that McReynolds showed up on Mr. Carter's witness list, and that Mr. Carter's trial counsel at one point even had a subpoena issued for him to come and testify. That was later quashed because the state was not ready to proceed with the trial at the time. But the trial counsel's failure to do this is simply deficient in the situation where you had a first-degree murder case which was based almost entirely on eyewitness testimony, and McReynolds would have provided the only eyewitness testimony from a disinterested witness, that Stone was the sole shooter, the only shooter. But there would have been some testimony from witnesses that arguably would have been on the victim's side, wouldn't there? There was testimony from witnesses who were on the victim's side, although none of them testified that Stone was the only shooter. They testified either that Stone and Cortez shot, that Cortez Jones shot, or that Petitioner fired or Petitioner was holding a gun. McReynolds would have been the only eyewitness, and certainly the only disinterested eyewitness, to testify that Stone was the only shooter, and that, you know what, that neither Jones nor Mr. Carter had a gun at that time, on the evening of the shooting. The state points out McReynolds, the fact that McReynolds had been in jail, but this is not an excuse for Carter's trial counsel's failure to contact McReynolds. The record shows that trial counsel was aware that McReynolds was in jail, kept him on the Mr. Carter's trial. And furthermore, the state makes a point that McReynolds, the trial counsel could have made the determination that McReynolds' credibility would be an issue due to his criminal history, but again, in this case, where he's such a critical eyewitness, that does not excuse Petitioner's trial counsel from even bothering to interview him and find out what his testimony would be and assess his credibility himself. Your Honor, I can see I'm into my rebuttal time, so I will, unless the Court has any other questions. Mr. Folsom. Ms. Kashuk. Good morning, Your Honors. May it please the Court, Counsel, I am Assistant Attorney General Gopi Kashuk on behalf of Respondent. I'd like to start with Judge Easterbrook's question regarding whether Petitioner made a request for an evidentiary hearing. Petitioner filed a post-conviction petition in which I believe he did not make a request for a hearing. On appeal, however, he did ask for a remand for second-stage post-conviction proceedings. And in Illinois, there are three stages to a post-conviction proceeding, and it's the third stage where an evidentiary hearing is conducted. However, we'd be happy to provide a letter to this Court documenting... I think it would be helpful if both sides would provide us their views as quickly as possible about whether a hearing was requested, when it was requested, whether that was procedurally adequate under state law, and what the state courts did in response, if there was a request. Sure. Turning then to the merits, Your Honor. Counsel focuses on... Sorry, excuse me. Petitioner focuses on Counsel's performance. However, he cannot meet the prejudice standard of Strickland under either Section 2254D, giving the state courts prejudice determination deference, or even under de novo review, Your Honor. And so I would like to start with de novo review and prejudice, and point out that neither witness, Calmeese nor McReynolds, places a gun in Gardner's hand. Instead, Calmeese actually supports the state's case. He... Excuse me. He says that Jones had a gun, which was the state's theory, that there were two sets of guns, that Jones shot and then Jones shot, or Petitioner shot. And so Calmeese actually would be harmful to Petitioner. Furthermore, Petitioner appears to rely on Calmeese for the proposition that Calmeese did not see Petitioner with a gun. However, Calmeese testified specifically at the evidentiary hearing on record page 2797 that his attention was focused on Jones, and that is because Jones had a gun in his pocket. And so Calmeese, with his attention on Jones, did not even look to see whether Petitioner had a gun. Likewise, McReynolds' attention was not focused on Petitioner or Jones. Instead, it was focused on Stone. And McReynolds testifies that he sees Stone shoot, and then he ducks back away from the window for a few seconds, and when he returns, everyone is fleeing. Well, McReynolds' vantage point, and you'll see from the record, is that... the person sees Stone shoot, and then she sees Petitioner and Jones shoot. So when you look at these two witnesses together, the time in which McReynolds ducks away from the window are the critical seconds in which she could have seen Petitioner and Jones' reaction to the shooting, whether they also shot. And certainly, McReynolds doesn't speak to whether Petitioner had a gun and brought a gun to this confrontation. So, Your Honor, Petitioner simply cannot show that counsel's failure to call McReynolds and Count Meese created a reasonable probability of a different result at trial. We have to remember... Is that the standard the State Court of Appeals used? I'm sorry, Your Honor, I... Is that the standard the State Court of Appeals used? You just articulated the Strickland standard. One of the arguments in this case is that the State Court of Appeals used the Lockhart against Fretwell standard, which is transparently inapplicable to a case like this. So my question is, what standard did the State Appellate Court actually use? The State Court applied Strickland, Your Honor. The State Court's decision wasn't contrary to Strickland, where it cited Strickland. It stated that Strickland had only two prongs. It described the second prong by using the reliability language used in Strickland. What do we do about the fact that it cited and quoted from a State case which had repeated the language from Lockhart against Fretwell? One, Your Honor, this State Court did not actually quote the outcome determination language from Lockhart v. Fretwell, the language that says that Strickland is more than an outcome determinative test. Rather, this Court simply said that Strickland prejudice requires a showing that the trial was fundamentally unfair or unreliable. But moreover, Your Honors, the State Court actually analyzed the probable impact of the omitted testimony here on the result of the trial. And after doing that, it concluded that the result would have been the same, even had the omitted testimony been presented. And in Floyd v. Hanks, this Court said that that analysis is consistent with Strickland. And Your Honors, this is not Williams v. Taylor. In Williams v. Taylor, the State Court imposed a third additional prong to a typical Strickland claim. So in Fretwell, like Your Honor pointed out, it was an unusual Strickland claim. And so perhaps in that case, in Fretwell, where the person could show deficiency, one, two, a reasonable probability of different results, then the Court in Fretwell in the unusual case said, we also have to show unreliability so there's no windfall to the defendant. But here, the State Court simply didn't impose that third additional requirement. And so its decision was consistent with Strickland. But even putting that to the side, Your Honor, even if a petitioner would prevail under 2054d, as discussed, he cannot meet the prejudice standard given the strong evidence of petitioner's guilt at trial. Neither Calmes nor McReynolds support petitioner's defense and neither do they undermine the compelling trial evidence establishing his guilt. Six witnesses saw Petitioner, Jones, Anders, Stone, shoot Gardner without provocation. Five witnesses, including the most disinterested witness, Officer Taylor, saw two sets of gunshots. And Calmes would have supported that and McReynolds simply doesn't speak to it. And contrary to Petitioner's characterization, this was not a peaceful discussion. It was never intended to be. The preparation by Petitioner and his co-defendants to first come up with the idea that Gardner was the one that was responsible for the earlier home invasion, contrary to what the family members are saying, and then to lure Gardner to the street by breaking into his van and stealing his radio, and then to return to the street and approach Gardner, all armed with a weapon, exposes the fallacy of this position and shows that Petitioner and his co-defendants went to the scene anticipating a violent confrontation. Illinois law on this point is clear. In these circumstances, a shot fired by one defendant is a shot fired by all defendants and they are all accountable. And that's precisely what the jury found here. So in this context, Your Honor, even had McReynolds and or Calmes testified, there's no reasonable probability of acquittal and Petitioner could not prevail in this proceeding. But the mere presence instruction was not given, was it? No, Your Honor. Mere presence instruction was not given. So if McReynolds had testified and had testified that... I'm sorry. If McReynolds had testified and testified that Carter did not pull the trigger, was not involved, and there was a mere presence instruction, could there have been a different outcome? If McReynolds had testified, Your Honor, and there had been given a mere presence instruction or had not been given? Had been. Had been given a mere presence instruction. No, Your Honor. Again, McReynolds doesn't speak to what Petitioner was doing. He ducks away from the window at the critical time. And so even had he testified, he would have simply testified... He wouldn't have testified that Gardner had a gun. And then two, he would have testified that Stone shot and then he ducked away from the window. And so that's just not useful testimony and certainly not strong enough testimony to overcome the... to create a reasonable probability of a different result given the compelling evidence of Petitioner's guilt. Unless this Court has further... has any further questions, we ask this Court to affirm the denial of habeas relief. Thank you, Counsel. Anything further, Mr. Folsom? First, we will submit a letter as requested by the Court. I heard Counsel, I believe, say that talking about the testimony showing that Carter, Cortez, Jones, and Stone all approached Mr. Gardner with guns and were all armed. And that's precisely the reason, Your Honor, that the testimony of Jeremiah McReynolds was so critical in this case. Because he, as I said, he would have testified that it was Stone and Stone alone that did the shooting. He's testified that he didn't see Cortez Jones with a gun at Cortez Jones' evidentiary hearing. He was not asked about his affidavit. He says that the only one he saw doing shooting was Mr. Stone. And also testified in his affidavit attached to the petitioner's state post-conviction report that the reaction of Carter and Jones was to scatter from the scene, which suggests that there was some surprise on their part that there had been a shooting. And with that, Your Honor, unless the Court has further questions, we will rest in our briefs on the argument here today. Thank you very much. Mr. Folsom, we appreciate your willingness and that of your law firm to accept the appointment in this case and the assistance you've provided to the Court as well as your client.